and so let me just get settled. Thank you. Mr. Fletcher, you have reserved two minutes for rebuttal. So that gives you eight to start. Just give me one second to get my little iPad set up. All right. The floor is yours. Thank you, Your Honor. May it please the Court. My name is Jordan Fletcher and I represent Plaintiff Appellant Michael Hayden in this case. Your Honors, I have three points to make today. The first is that Mr. Hayden was not on inquiry notice of his claims prior to 2019 and the District Court's finding to the contrary was erroneous. Second, Appellee's fair use defense fails as a matter of law. And third, the Supreme Court's decision in Warner Chapel compels reconsideration as to the damages period. Now, turning to the first issue, I think it's clear that the defendant's statute of limitations affirmative defense fails as a matter of law and the District Court committed two fundamental errors in ruling otherwise. The first is that the District Court failed to identify and apply this circuit standard for inquiry notice, which is that the plaintiff must have information indicating that infringement is probable. Can we just pause for a second? Yes. It seems to me that a person who has a copyright presumably ought to even know where their work is and should be interested enough to find out about that. It seems from the record that your client prepared this original work, got a check for it, and never thought about it again and never possessed it again for 30 years. Is that right? That's correct, Your Honor. Okay. And so you're saying that a right holder has no obligation to keep tabs on his own work. Well, I think that's the holding of this Court and all other courts in discovery rule cases. I think up until the point that the plaintiff has some knowledge of some facts that would suggest that infringement has occurred. Well, it's not even clear that he's asserting any kind of copyright over the work. I mean, he got paid for it. He gave it to somebody else. Your Honor, under Italian law, and also it would be the same under U.S. law, Mr. Hayden does own all copyrights and all sticks in the bundle of copyrights. He sold the physical object. So he just didn't care enough to know where it was, who was using it, what they were doing with it. He had no interest in even knowing that. Your Honor, Mr. Hayden is a working artist who made and sold many pieces of art during the 1980s and the 90s and beyond. And the case law puts no affirmative obligation on artists to know what happens to all of their artwork that they sell at any time in the course of their career. To do otherwise would essentially require an artist to sit around all day policing now the Internet to look for infringements that might have happened if they have no idea that the infringement ever happened. Now, I agree in this case, Mr. Hayden sold several works to a woman named Alana Stoller and her production company. He did some business with them, and then he went on with his life. There are – when you start looking at the potential storm warnings, there are quite a few facts that I believe are undisputed. What is – he contends he didn't know about the storm warnings, right? He has – well, I think, Your Honor, a storm warner has to come to the attention of the plaintiff. Well, that's my question is, is it that the plaintiff must know about the storm warnings or is it that a reasonable person would have known about the storm warnings? For example, you can get a storm warning by reading an article in a newspaper. The plaintiff doesn't – I mean it doesn't matter whether the plaintiff actually read the article, but the fact that it's in a publication of that sort puts people on notice. And so that's what – even assuming Mr. Hayden didn't know about all of these things, would a reasonable person have known about this in his circumstances, living in Italy for 20 years, being in the field, the public displays of the piece, the magazine article, et cetera, et cetera, et cetera? Thank you, Your Honor. So I think the answer to that question is no, a reasonable person would not. And we have testimony from two witnesses in the record, Mr. Hayden and his business partner, Mr. Maschino, who is an Italian national who said regular Italians don't know who Jeff Koons is. Second, the media articles that counsel points to that actually contained the infringing works, one was a French publication in French. From a big-picture sense, I mean, does it make sense that 33 years later someone can bring a copyright infringement case? Well, the discovery rule, Your Honor, triggers a duty of diligent inquiry upon the date of discovery of facts that suggest inquiry is probable. Now, here, Mr. Hayden did not get any idea that inquiry – that, excuse me, that infringement had happened until 2019. Now, in terms of the things that were – that might have been knowledge or known to some people in Italy at the time, the fact that Jeff Koons is an artist, that does not suggest that infringement was probable. The fact that he – He went through all of the facts, including that the initial publication created a media sensation and scandal. He was aware of the relationship between Koons and Stahler and the custody dispute. He had done work for Stahler, done work for Stahler's companies. When you put all those things together – I mean, what I'm struggling with in part is what – is it a preponderance? You know, preponderance of the evidence that a reasonable person would have known of these facts? Well, Your Honor, I think the case law says that you actually have to know something to trigger inquiry. Now – Is it that you have to know something, or is that a reasonable person would have known something? Even if – Your Honor, even if – I think the answer is a reason – you must know something. And I think that's clear from the Mayer case, from the first Ninth and Tenth Circuit cases that we cite. Inquiry notice is triggered by something that comes to your attention. Now, even – Your Honor, even if – What about newspaper articles? You know, in securities fraud cases, they come up all the time. Well, there have – There's no requirement that the securities holder have actually read the newspaper articles. It's a fact that they are out there. Well, in those cases, Your Honor, first, they often deal with class action. So you have to guess at what a reasonable class member might have come up against. Second, they're all on the motion to dismiss – at the motion to dismiss stage. So you don't actually know what the plaintiff knew at the time. Now, even if we're going to place a burden on anyone to know what Jeff Koons was up to in 1990, know what the content, know that he was – had an exhibition in Venice, that still doesn't tell us that an infringement occurred. It doesn't give us any idea that an infringement occurred. And to hold otherwise, Your Honor, I believe, basically creates a form of celebrity privilege. It says that we all have to know what any celebrity, someone in the media, is doing at all times down to the minutia of the works that are appearing in various galleries. Yeah, I don't know that I can go that far. But the question is whether under the totality of the circumstances and the ten different facts that one can point to whether a reasonable person would have known of this use of Mr. Hayden's piece. Well, Your Honor, I think if a reasonable person had – Mr. Koons was an artist. That does not indicate infringement occurred. If a reasonable person had known that – Does the complaint allege that he's one of the most famous artists in the world? We're not all required to know what all the famous – Does the complaint allege that? The complaint alleges that Mr. Koons is a famous artist. It does not – And so wouldn't a reasonable person know that he's a famous artist? Some people might. I mean, I know that there are some famous people called the Kardashians, but I don't watch their TV show and keep up with everything they do. But so your view – I'm just trying to understand this, Mr. Fletcher. What you're saying is that you have a work. The Kardashians are showing that work every day on – you know, every week on TV. And because you don't own a TV, you get to just sort of live in your little world for 30 years and then come out and say, oh, I just learned about this and I have an infringement claim. Well, Your Honor, I may own a TV, but that doesn't mean I watch their TV show. And I think I – I don't think I have an obligation to watch their TV show. But that is the point. I mean, if things are sufficiently in the public eye, the expectation is that a reasonable person would be aware of it and would follow up. You seem to be suggesting that if you're a hermit, you get the hermit's privilege of, you know, waiting 30 years to come out of hibernation. Your Honor, I don't think you have to be a hermit not to know the contents of Jeff Koons' exhibit at the Venice Biennale in 1990. Well, that may be, but it seems to me you were arguing a different point, which is that you have to know before you have any obligation to do due diligence. I think I have two points, Your Honor. The first is that the case law says that inquiry notice is triggered by a fact that comes to your attention. I happened to be in the court two days ago. I saw your exploding pressure cooker case. And there the pressure cooker blew up in the plaintiff's face. Here there was no pressure cooker until 2019. Now, that's a legal question. Okay, but again, your view is that if something is in a movie, if you didn't see the movie, then you don't know, and so your clock for due diligence doesn't start ticking. I do think that's what the case law holds, Your Honor. But even if that's not the case, I don't think the facts that Mr. Hayden has been charged with knowing here that Jeff Koons is an artist, that he was married to Ilana Stoller, none of those create a duty to investigate. The fact that an artist sells work to an individual in the public, I don't think it creates a duty to follow that individual through the rest of their lives. This is not really a duty to investigate case in the sense that with the pressure cooker, the thing blows up, and then there's a duty to inquire as to why and whether there's a defect. Here, once you see the billboard, for example, he would know that there is infringement. So it's a little bit different from those cases. Yes, Your Honor, but the billboard appeared in New York City in 1990. Mr. Hayden was not the only work that even appeared in the city. I'm using it as an example. Again, the billboard, the New York display, the Venice display, the magazine article, there was a sale to another museum, knowledge about the custody battle, 33 years, living in Italy, speaking Italian, being immersed in Italian culture, totality of the circumstances. None of that would tell a reasonable plaintiff that infringement has occurred. It is a thing that is out there in the public. Someone might encounter it, but there were 30 works in Kunz's entire series. Only one of the infringing works even appeared in Italy. There are only two magazine articles in the record that even have a glimpse of the infringing work. One is an English language copy of Vogue. The other is a French magazine in French. So all of the facts that Your Honor has pointed to, even if we're going to charge someone with knowing things that they don't actually know, none of them suggest that infringement is possible, Your Honor. None of them suggest that it might even have happened. All right. Well, you've got two minutes for rebuttal. We've gone over a bit, but we have questions. So thank you, Mr. Fletcher. Thank you. And I'll hear from Mr. Brooks. Good morning, Your Honors. Daniel J. Brooks for the Appleese. Let me just start with what the law is. It's announced by the Supreme Court in the Merck case and reaffirmed in the Intel case 10 years later. This is what the Supreme Court said. We hold that discovery encompasses not only those facts the plaintiff actually knew, but also those facts a reasonably diligent plaintiff would have known. And the Supreme Court explained that the discovery rule is originally a judge-made rule. In fact, applying it here in this case now is a common law determination because the Supreme Court has never held that the discovery rule applies to copyright. This circuit and I think nine other circuits have held that it does. But when they do that, they're doing it under a common law, judge-made law. And in Merck, the Supreme Court explained that when a statute, the statute, for instance, in this case in Merck, it's very simple. It said you have to sue within two years after the discovery of the facts constituting the violation. This is in Title 28. It's a catch-all. So the Supreme Court explained in Merck that discovery is a term of art, and when Congress passes a statute putting a discovery, the word discovery into a statute of limitations, they are incorporating and bringing in the common law case law, which is extensive, about the discovery rule. The argument is that he did not know about the infringement, that he didn't know about the facts that I pointed to, that he wasn't in France to see the exhibit, he wasn't in Venice at the time. How do you respond to those arguments? The way I respond is that a hypothetical, reasonable plaintiff should have known about this. The complaint has a judicial admission in paragraph 10 and 37. It says the Made in Heaven series caused a media sensation and scandal when it premiered, and it is regularly credited with launching Mr. Kunz into the art world's stratosphere. So it was such a big scandal in Venice, on TV in Rome, which he was watching, and in the local tabloids, which he was reading. It was a major scandal. So the question is, as Merck said— It sounds like you're arguing that he actually knew. No. He said he didn't. I can't disprove it. I could try to go back and find all the people he knew 35 years ago in Italy and take their depositions with letters rogatory. We didn't do that. I believe a reasonable, hypothetical, reasonable plaintiff in his position would have known, and as Merck said, whenever a statute of limitations uses the word discovery, and this is a quote, according to Merck, courts have typically interpreted the word to refer not only to actual discovery but also to the hypothetical discovery of facts a reasonably diligent plaintiff would know. Ten years later, the Supreme Court in the Intel case said the law— Now there, the statute said actual knowledge. It's unusual. It's the ERISA statute. The Supreme Court said the law will sometimes impute knowledge, often called constructive knowledge, to a person who fails to learn something that a reasonable, reasonably diligent person would have learned. I can't think of a better description for Mr. Hayden. Maybe Kermit comes close. What about the idea— I'm sorry. Yes, your adversary raised this idea of even if knowledge of this series of works was commonly known and it was a big deal, how does that go to whether or not the infringing part of it would be known? In other words, would a reasonably diligent person, even if they're aware of, like, oh, there's this artist, Coons, and there's all this media sensation, he's got this race, they wouldn't actually see the portions of this series of works that shows the pedestal. Well, we tried to find news clips from 30 years ago in Rome and newspaper articles, which he always could say, well, I didn't read that paper, I didn't read it that day. But it really defies credulity that they didn't show those pictures. I mean, this is the paparazzi. We're all over the place. Let me just jump in for a second. They didn't show the portion of the picture that includes the pedestal, that that's—  Well, the artworks, he says the three artworks in question all have the pedestal in them. I think with the statue that's a little dubious. I don't recognize it. But the other two, a photograph was taken, and the pedestal is being used as a— not for its artistic merit, it's being used as a platform, a functional platform, which may not even be protected. But yes, it's in there. And if you look at the Vogue, the only reason the Vogue article and the other two, Flash Art and Galleries, are in the record is because in Discovery we were asked to produce any interviews of Mr. Kuhn's. We produced those three, plus one he gave at the Hirshhorn Museum in 2013, a talk he gave. So those are there. The actual Italian tabloid newspapers and the local news, we don't— it's 35 years later, we don't have access to it. But if you look at the ones you do have, there are the pictures. The paparazzi are swarming all over the place. Of course they're going to, on TV and in the newspapers, show the one that was at the Venice Biennial. Plus there were some others that were at the Venice Biennial that are not subject to this lawsuit because it didn't use his platform, it used another platform. Just as Andy Warhol, according to the Warhol decision by the Supreme Court, his Campbell Soup cans probably would have been transformative and fair use because their purpose was orthogonal to the purpose of the soup cans, which is to sell soup. His purpose was to make a comment on consumerism. But what gave him the right to use Campbell Soup? Why didn't he use Coca-Cola? Or if he was live now, an iPhone? I mean, there has to be some wiggle room in the Copyright Act or else you're going to stifle the very creativity that the Act is intended to engender. I just want to make one point. The cases he cites that show that Merck isn't followed in the Second Circuit and they're still using this inquiry notice test where the plaintiff has to have actual knowledge, the cases he cites don't say that. The first one is Foto, P-H-H-T-O versus Meta. I believe, Judge Chin, you dissented in that one because it wasn't a discovery rule case. It was a case about equitable tolling of the statute of limitations because of fraudulent concealment. That's a different body of law. It's completely distinguishable. Judge Lee and Judge Chin, you noted that in the recent Michael Greco case, that the discovery rule is not the same thing as equitable tolling. So that case is not a discovery rule case. Plus, it's an antitrust case. They seem to be saying, well, Merck is in the copyright case, so you shouldn't pay any attention to it. Well, Foto isn't either. It's an antitrust case. And it's not a discovery rule case. The next one that Mr. Fletcher mentioned today, Meyer v. Seidel, that is not a discovery rule case under the prevailing federal law. That's a case where the plaintiff bought a Mark Rothko painting, and then he believed it was a forgery, and he sued. The only reason it was in federal court was diversity of jurisdiction. He sued under New York law for fraud, common law fraud. CPLR 213 subpart 8 is the statute for fraud in New York. It's six years or two years from when the plaintiff knew or should have known. Plus, it's not federal substantive law. It's irrelevant. The third case they cite is Soam v. Scholastic, and I'll just quote Judge Sullivan's excellent opinion in that case, where he said, Scholastic, the defendants, merely maintains that Soam never conducted an audit or contacted her agents to inquire about payments despite having the ability to do so. It's a contractual ability. It's a contract case. Or without identifying facts or circumstances that would have prompted such an inquiry. So that's not like this case. That's a case where there was nothing to discover actually or constructively. There were no facts that were pled. Merck has been followed in this circuit. We cite two cases. One is a 2017 case called Federal Housing v. Nomura. It's a 2017 decision by this court. It says Merck changed the Second Circuit law. It says that. What law did they change? The law that Mr. Fletcher is bringing to your attention about inquiry notice and storm warnings. Merck said those are useful because that's when you should start investigating, but that's not the test. The test is when would you have discovered it or when would a reasonably diligent plaintiff have discovered it? And they said we reject inquiry notice. Can I ask you briefly to just touch on the DMCA? Yes. DMCA. And what is at play between the two claims and the discovery rule?  The DMCA? Yes. In their brief to this court, but not to the district court, the claim is asserted that this is at page two of their opening brief. Mr. Hayden's DMCA claim supposedly, quote, accrued independently from his infringement claim based on separate and much later occurring website displays of the Kuhn's works. Okay, those words are not in the complaint. There is no allegation in the complaint that the Kuhn's works were put on Kuhn's' website much later than when they were created in 1990. That's not in the complaint. It's also not in the opening brief they filed with Judge Schofield there. It's not. Well, no, it was Judge, I don't remember. It was Judge Schofield. Then it's not in the reply brief they filed. And when Judge Wright heard the argument earlier this year, it wasn't mentioned. It never came up. It never came up at all, not one word about it. So it's not preserved for appellate review. Even if it were in the complaint, which it's not. Now, what is in the complaint is in the paragraphs that talk about, you'll have to take my word for it, the paragraphs in the complaint that talk about the website and the DMCA are paragraphs 16, 44 through 47, 54, and 76 and 77. There's no mention of it being much later occurred. However, in paragraph 44, there is this allegation. The infringing works have also been displayed on Information and Belief for many years on Mr. Kuhn's website. That's all we know about how long when they were first put on. Now, Mr. Kuhn was deposed in this case, and he was asked about the website, and he was asked about whether these works were displayed on the website. And he said, yeah, all my works are all displayed on the website. And he was not asked, well, when did you first start putting these on the website? But we think that because a reasonable person would have discovered this alleged infringement, they would have also at the same time, at or about the same time, or subsequently, but well before the statute, well before 2017, 18, which would be three years before this lawsuit was filed, they would have also looked at Mr. Kuhn's website. It's not a secret. You just type in JeffKuhns.com, I think it's right there. And so I think the same case law which mandates the dismissal of the copyright infringement case also mandates the dismissal of the statute of limitation of grounds from the DMCA. All right. Thank you. We'll now hear from Mr. Fletcher for two minutes of rebuttal. Thank you, Your Honor. Your Honors, on Merck, Merck addressed the text of the Federal Security Statute, and the Supreme Court was very clear that that's what they were dealing with. But even if it did apply here we need to be careful. He talks about the language for the discovery rule is the same, though, isn't it? The language for the discovery rule comes out of common law fraud and the Federal Security Statute and copyright.  The point is Merck uses, talks about the same language. It does. And it says the standard is actually higher, Your Honor. It says the injury rule isn't the standard. I mean, excuse me, inquiry notice isn't the standard because even if there were a reason to inquire, the statute of limitations doesn't start or the clock doesn't start running until a reasonably diligent plaintiff would have discovered or would have found the information. So, again, Merck says inquiry notice is not high enough. You actually have to go higher. Sohm is a copyright case. Your Honors are both intimately familiar with it. And there Judge Sullivan wrote that the defendant, again, this is a defendant's burden. It's the statute of limitations, must identify some affirmative evidence that would have been sufficient to awaken inquiry and prompt an audit. Now, it's not explicitly said whether that affirmative evidence must be known to the plaintiff or not. But either way, again, the things that Mr. Hayden is being said he should have known, I don't understand how those are sufficient to prompt an audit to see if he's been infringed. Again, if he knew about Jeff Koons and his exhibition in 1990, he still has no reason to go out looking to see if he was infringed when he sold his work to Ms. Stoller. Mr. Brooks' conversation of hypothetical plaintiffs, again, we can say a hypothetical plaintiff should have known certain things. Should have known Jeff Koons was an artist. Should have known he had an exhibition. Should have known he had a child custody dispute. Actually, Mr. Hayden did know he had a child custody dispute. And the district court said that even though Mr. Hayden said that's all he knew, I think an article that he read actually said something else. And that article wasn't on evidence, Your Honor. The district court's just invented facts that it thought were a substitution for Mr. Hayden's actual testimony. Again, Your Honors, Judge Shin, I know you said you didn't think this was the case, but I don't see how placing Mr. Hayden on notice of all of the things that he's supposed to be on notice of in this case doesn't create a form of celebrity privilege that gives us a pass to people who just happen to be famous and they're zeitgeists. Well, it's not a celebrity privilege. It's basically saying that a reasonable person living in the world would learn about certain things. That it's not — it doesn't insulate a rights holder to say, well, I live in a cave, so I don't have any obligation to figure out what's going on. I understand that, Your Honor. But I think it creates this slippery slope where — how prevalent does the information have to be? It's not just that Coons is a celebrity. It's all of these other things. Yes, Your Honor. But none of those indicate — but none of those suggest that infringement actually occurred. Like, there's no reason. He could have said, oh, I know that there was an exhibition. But why does that tell him that he's got to go looking and digging into the whole exhibition catalog to find out that he was infringed? Finally, Your Honors, on the DMCA, again, I think the appellees are trying to flip the burden here. We argue the DMCA below in the — Absolutely. Extensively. But to the point of whether the statute of limitations applied or not, we argued that Mr. Hayden was not on inquiry notice until 2019. Now, under Petrella, each claim accrues separately. Like, each copyright claim accrues separately. And the defendants have to show — When did the website post the images? There's no information. There's nothing in the record that says one way or another. And the district court did not find it. Was it years earlier? We said many years earlier. But to say that the posting happened many years earlier and not have a factual finding as to when Mr. Hayden should have become aware of it essentially applies an injury rule rather than a discovery rule. Well, we're over and we have a full calendar, but certainly we have your briefs and we have the argument today. So thank you both. Thank you. We'll reserve decision.